UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRITICAL SITE CONSTRUCTION, LLC;<br><br>Plaintiff,<br><br>v.<br><br>X-WAVETECH, LLC, JOSH NOLL, individually, LISA NOLL, individually, JERRY NOLL, individually, JOHN AND JANE DOES 1-10, and ABC CORPORATIONS 1-10.<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Critical Site Construction, LLC (hereinafter "Plaintiff"), by and through its attorneys, Deutsch Atkins & Kleinfeldt, P.C., by way of Complaint against Defendant X-Wavetech, LLC (hereinafter "Defendant X-Wavetech"), Defendant Josh Noll, individually, Defendant Lisa Noll, individually, Defendant Jerry Noll, individually, collectively ("the Defendants") asserts the following:

## INTRODUCTION

1. Plaintiff brings this action seeking legal relief against Defendants for (1) Tortious Interference with Contractual Relations, (2) Fraudulent Inducement, (3) Breach of Contract.

2. In June 2023, Defendant Josh Noll informed Plaintiff that Defendant X-Wavetech wanted to acquire Plaintiff.

3. As a result of the acquisition negotiations Defendants gained confidential knowledge of Plaintiff's employees and clients.

4. The confidential knowledge gained by the Defendants includes the structure of Plaintiff's employment contracts and the non-compete and confidentiality clauses included in said contracts.

5. From June 2023 to the present, the Defendants have maliciously poached several employees and customers from the Plaintiff, even with the knowledge that these employees have non-compete and confidentiality clauses in their employment agreements with the Plaintiff.

6. During the course of the acquisition discussions the Plaintiff and Defendant X-Wavetech executed an "Invoice Submissions and Approval Policy Agreement" (hereinafter "Invoice Agreement") on November 29, 2023.

7. The nature of the Invoice Agreement was for the Plaintiff to act as a vendor/supplier for X-Wavetech's construction projects. Plaintiff supplied labor and materials for several X-Wavetech projects.

8. Upon information and belief, the Defendants entered the Invoice Agreement as part of their malicious intent to get further access to Plaintiff's employees, and lure those employees from the Plaintiff.

9. Per the Invoice Agreement, Defendant X-Wavetech agreed to make payments to Plaintiff in full within forty-five (45) days of receipt of an invoice for services rendered and materials provided.

10. By January 2025, Defendant X-Wavetech, failed to pay multiple invoices forty-five (45) days past receipt, in breach of the Invoice Agreement.

11. Defendant X-Wavetech's late invoice payments total to two hundred and twenty-one thousand seven hundred and seventy-two dollars and eighteen cents ($221,772.18).

12. On January 13 and January 14, 2025, Defendant Lisa Noll acknowledged that Defendant X-Wavetech owes the Plaintiff payments for the overdue invoices. However, since January 14, 2025, Defendants have ignored all inquiries from Plaintiff regarding the outstanding invoice payments.

## PARTIES

13. Plaintiff is a construction company that provides labor services, globally, to complex mission critical projects[1]. Plaintiff was formed in New Jersey and has its principal address in Wyckoff, New Jersey.

14. Defendant X-Wavetech is a construction company also specializing in mission critical projects. Defendant X-Wavetech regularly engages and conducts business in New Jersey. Defendant X-Wavetech was formed in Florida and has its principal address in Orlando, Florida.

15. Defendant Josh Noll is the Chief Executive Officer (hereinafter "CEO") of Defendant X-Wavetech. Upon information and belief, Defendant Josh Noll is a citizen of Florida.

16. Defendant Lisa Noll is the Chief Financial Officer (hereinafter "CFO") of Defendant X-Wavetech. Upon information and belief, Defendant Lisa Noll is a citizen of Florida.

17. Defendant Jerry Noll is an employee at Defendant X-Wavetech. Upon information and belief, Defendant Jerry Noll is a citizen of Virgina.

18. During the relevant time period, Defendants John and Jane Does 1-10 are currently unknown individuals who aided and/or abetted in the commission of the unlawful conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

---

[1] Mission critical projects are building projects for facilities that require continuous, uninterrupted operation, such as data centers, hospitals, and power plants.

19. During the relevant time period, Defendants ABC Corporations 1-10 are currently unknown entities who aided and/or abetted in the commission of the unlawful conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities or individuals by name.

## JURISDICTION & VENUE

20. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties hereto and the amount in controversy exceeds $75,000.

21. This Court has personal jurisdiction over the Plaintiff because Plaintiff was formed and has its principal place of business in Wycoff, New Jersey.

22. This Court has personal jurisdiction over Defendants because they regularly engage and conduct business in New Jersey.

23. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b)(3) because the Defendants are subject to this Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

24. Plaintiff began its business relationship with Defendants in 2022.

25. Defendants' acquisition negotiations with Plaintiff lasted from June 2023 to December 2023.

26. In or around the end of 2023, Plaintiff presented Defendants with a fair market offer to purchase the Plaintiff.

27. Defendants did not respond to Plaintiff's offer.

28. Instead, Defendants used information learned during the acquisition process to lure Plaintiff's employees from Plaintiff.

29. Defendants have maliciously convinced several employees of Plaintiff to leave their employment with Plaintiff, and work for the Defendants instead.

30. Defendants engaged in this behavior despite their knowledge that these employees would be breaching their non-competes with the Plaintiff.

31. By the end of 2023, it became clear that the Defendants were not interested in acquiring the Plaintiff and had fraudulently induced Plaintiff to engage in acquisition negotiations in order to gain confidential information from the Plaintiff.

32. Upon information belief, at least sixteen (16) employees with non-competes have been taken by the Defendants since June 2023, with Defendants having full knowledge of these employees' non-competes with the Plaintiff.

33. The loss of these employees has significantly damaged Plaintiff by disrupting its business operations.

34. From June 2023 to the present, Defendants have also taken several customers from the Plaintiff.

35. Upon information and belief, the Defendants are utilizing the knowledge of the employees taken from the Plaintiff to engage with Plaintiff's customers and steal them from the Plaintiff.

36. Upon information and belief, Defendants are maliciously having Plaintiff's current and former employees breach the confidentiality clause of their employment agreements with the Plaintiff so that Defendants can successfully engage with Plaintiff's customers.

37. The Defendants had no legal justification in persuading the Plaintiff's employees to breach their employment contracts with the Plaintiff.

38. The loss of customers has caused significant monetary damages for the Plaintiff.

39. Throughout 2024, Defendant Jerry Noll solicited several of Plaintiff's employees working on a project in Ashburn, Virginia and convinced them to work for Defendant X-Wavetech.

40. As a result of the acquisition negotiations, Defendant Jerry Noll was aware of the non-competes that Plaintiff's employees had in their employment contracts. Despite Defendant Jerry Noll's knowledge of the non-competes, he still solicited Plaintiff's employees and convinced them to work for Defendant X-Wavetech.

41. On December 10, 2024, Plaintiff's CEO, Bill Careri, received several threatening text messages from an individual named "Bryan" who claimed to be a labor manager at an undisclosed company.

42. In the text messages from December 10, 2024, Bryan stated "Your company is going under. We are taking all the guys. Rip me off now I rip you off. Good luck. They all want to work for me. I tried to work with you. About 20 guys are coming with me. Alphonse is mine now too. Ask your guys who wants to stay with you. Zero[.]" .

43. Bryan also texted "…They are telling me not to supply any men to csc." and "They are phasing out csc[.]"

44. Upon information and belief, "Bryan" was actually one or all of the Defendants or an agent of the Defendants, as all of the employees leaving the Plaintiff were being hired by the Defendants at the time of this text message, December 10, 2024.

45. Additionally, the employee that Bryan mentions, "Alphonse", bears a resemblance to the name "Alfonso", which is likely a reference to Plaintiff's employee Alfonso Comello Jr. ("Mr. Comello").

46. Mr. Comello resigned with the Plaintiff in January 2025, shortly after the threatening text messages from "Bryan", and started working for Defendant X-Wavetech.

47. In regard to the breaches of the Invoice Agreement, Defendants have not made any efforts to pay Plaintiff the two hundred and twenty-one thousand seven hundred and seventy-two dollars and eighteen cents ($221,772.18) owed to the Plaintiff.

48. Plaintiff has fulfilled all of its obligations under the Invoice Agreement in order to be entitled to payment from the Defendant.

49. On February 12, 2025, this office sent Defendant Josh Noll a letter on behalf of Plaintiff demanding the $221,772.18 owed to the Plaintiff. Even after this correspondence, the Defendants did not pay any of the $221,772.18 owed.

## COUNT I
### Tortious Interference with Contractual Relations

50. Plaintiff hereby repeats and realleges all the allegations set forth above as if set forth at length herein.

51. There are several valid employment contracts between the Plaintiff and the Plaintiff's current and former employees, which include non-competes and confidentiality clauses.

52. The Defendants have full knowledge of these employment contracts and the details of the employment contracts.

53. Despite the Defendants' knowledge of the employment contracts, and the non-competes and confidentiality clauses in said contracts, they maliciously convinced several of Plaintiff's employees to breach their employment contracts for the Defendants' benefit.

54. The Defendants had no legal justification in interfering with the employment contracts between the Plaintiff and the Plaintiff's employees.

55. As a result of Defendants' tortious interference with the contracts between the Plaintiff and the Plaintiff's employees, the Plaintiff has suffered significant damages.

56. The Defendants' conduct described herein was especially egregious, willful, wanton, and in reckless disregard for Plaintiff's rights, such as to justify an award for punitive damages.

**WHEREFORE** Plaintiff demands judgment against Defendants seeking the following relief:

(a) Compensatory damages; economic damages;

(b) Punitive damages;

(c) Injunctive relief;

(d) Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

(e) Such other relief as the Court may deem just and appropriate under the circumstances.

## COUNT II
### Fraudulent Inducement

57. Plaintiff hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

58. Defendants made a material misrepresentation of present fact when they represented to the Plaintiff that they wanted to acquire the Plaintiff in June 2023.

59. Defendants made this material misrepresentation knowing that Plaintiff would reveal confidential information to the Defendants, including Plaintiff's employment contracts and relationships with clients.

60. Defendants intended, knew, or should have known that Plaintiff would rely on their material misrepresentation to Plaintiff's detriment.

61. Plaintiff relied on Defendants' misrepresentation to Plaintiff's detriment.

62. It was reasonable for Plaintiff to rely upon the factual misrepresentation of Defendants.

63. Defendants have obtained pecuniary gain from their material misrepresentation.

64. Plaintiff has suffered significant damages.

65. The conduct described herein was especially egregious, willful, wanton, and in reckless disregard for Plaintiff's rights, such as to justify an award for punitive damages.

**WHEREFORE** Plaintiff demands judgment against Defendants seeking the following relief:

    (a) Compensatory damages; economic damages;

    (b) Punitive Damages;

    (c) Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

    (d) Such other relief as the Court may deem just and appropriate under the circumstances.

### COUNT III
### Breach of Contract

66. Plaintiff hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

67. Pursuant to the Invoice Agreement that the parties executed on November 29, 2023, Defendant X-Wavetech agreed to make payments to Plaintiff in full within forty-five (45) days of receipt of an invoice.

68. The Invoice Agreement is a valid contract between the Plaintiff and Defendant X-Wavetech.

69. Defendant X-Wavetech failed to pay multiple invoices forty-five (45) days past receipt, in breach of the Invoice Agreement and Plaintiff has fulfilled all of its obligations under the Invoice Agreement entitling Plaintiff to payment.

70. Defendant X-Wavetech knowingly and intentionally violated its obligations under the contract and breached its obligations to pay Plaintiff amounts due under the contract.

71. Defendants owe a total of two hundred and twenty-one thousand seven hundred and seventy-two dollars and eighteen cents ($221,772.18) in invoice payments.

72. As a result thereof, Plaintiff has experienced damages.

73. Plaintiff's tortious interference and fraudulent inducement claims are closely related to Defendant X-Wavetech's multiple breaches of the Invoice Agreement.

74. The Defendant's conduct described herein was especially egregious, willful, wanton, and in reckless disregard for the Plaintiff's rights, such as to justify an award for punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants seeking the following relief:

    (a) Compensatory damages; economic damages;

    (b) Punitive Damages;

    (c) Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

    (d) Such other relief as the Court may deem just and appropriate under the circumstances.

Respectfully submitted,

Dated: May 7, 2025

*/s/ Bruce L. Atkins*
BRUCE L. ATKINS, ESQ.
DEUTSCH ATKINS & KLEINFELDT, P.C
*Counsel for Plaintiff, Critical Site Construction, LLC*
batkins@deutschatkins.com